Victor Palmer, alias Vic Palmer, and Norman Heidt, alias Bubber Heidt, *Plaintiffs in Error,* vs. State of Florida, *Defendant in Error.*

143 So. 126.

145 So. 69.

En Banc.

Opinion filed July 19, 1932.

Petition for rehearing denied January 2, 1933.

*Burnside & Richard* and *R. G. Tittsworth,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Charles B. Parkhill,* State Attorney, for the State.

PER CURIAM.—This case is before the Court on writ of error from a judgment of the Circuit Court of Hillsborough County sentencing the plaintiffs in error to death for the murder of Joe B. Johnson.

The evidence shows that Joe B. Johnson, a well to do citizen of Tampa, was shot and killed on the night of Sunday, January 18th, 1931, near midnight, while he was putting his automobile in a garage in the rear of Crescent Apartments in Tampa. The motive was robbery. The shot that killed Johnson was fired by the plaintiff in error, Victor Palmer, who, according to his own confession and testimony at the trial, was furnished the pistol for that purpose by one Louis Leavine, with the instruction: "Here is the gun, tell him to stick them up and if he don't stick them up pull the trigger." The pistol was a 32 caliber automatic pistol, and when Johnson failed to "stick them up" quick enough, Palmer followed instructions to "pull the trigger" with the result that Johnson was wounded one time in the right breast just under the nipple from which wound he died late the following day. Prior to this time, Louis Leavine, "Bubber" Heidt and Victor Palmer had been riding around together in a Ford sedan car which Leavine had borrowed for the purpose, and at the time of the shooting by Palmer, he and Leavine were together after having left the car in charge of Heidt, who remained with it.

Leavine, Palmer and Heidt were jointly indicted, but only Palmer and Heidt were jointly tried. The jury found both of them guilty of murder in the first degree, without recommendation of mercy. Leavine having es-

caped the country and not being in custody at the time of the trial of Palmer and Heidt, a severance was granted as to him on motion of the State. After the verdict of guilty, motions for new trial were separately made and denied as to each of the plaintiffs in error.

The guilt of both plaintiffs in error is amply established by the evidence, which consists not only of the testimony of disinterested witnesses as to circumstances corroborating their guilt, but of proof of damaging admissions by each of them concerning their personal participation in the series of acts which immediately preceded and accompanied the ultimate attempted robbery and actual murder.

Palmer confessed firing the shot while attempting the robbery of Johnson, and also testified at the trial to that effect. Heidt did not become a witness nor testify at the trial, but his written statement or so-called "confession," which had been made and signed by him, shows that he was present at the scene of the homicide when the fatal shot was fired; that just prior to that time he had been in the same car in company with the other two participants, one of whom admitted he actually fired the shot, and that he (Heidt) drove away with one of them from the scene of the shooting.

This showing was sufficient to warrant the jury in rejecting the exculpatory portion of Heidt's so-called "confession" wherein he undertook to relieve himself of guilt of complicity in the crime by showing that while he was present at the place of the attempted robbery and heard the gun fire about the time Johnson was shot and Louis Leavine came back and Victor Palmer ran away, that he knew nothing of the "criminal intentions" of either of his companions in connection with their endeavor to perpetrate a robbery while Heidt himself innocently remained alone in the car waiting for the others

to return. Also Heidt's apparent flight a day or two later to Savannah, Georgia, where he was arrested, confirms the jury's right to draw the inference that he was implicated in the crime which was just then about to be solved by the police by the arrest of one of its perpetrators, when Heidt acquired his unexplained eagerness to go to work in a distant city.

The Court has carefully considered the whole case as disclosed by the transcript and finds some irregularities but no reversible error in the record. Both defendants were given a fair trial, and the resultant verdict of guilty of murder in the first degree is the only verdict that could have been rendered by the jury without being contrary to the law and the facts.

In affirming the conviction of Palmer we deem it of importance to call attention to the fact that while the motion for a new trial filed by Victor Palmer does not appear to have been filed within the four days required by law (Section 4497 C. G. L., 2810 R. G. S.), but was filed pursuant to a special order made by the trial judge allowing such motion for new trial to be filed *after* the expiration of such four days, we have nevertheless most carefully examined the bill of exceptions reserved as to the proceedings had on Palmer's trial, and notwithstanding the fact that his motion for a new trial was made out of time and this circumstance would prevent its consideration as a proper motion under the law (McLendon v. State, 90 Fla. 272, 105 Sou. Rep. 406), and have found that no reversible error appears as to Palmer and that his motion for a new trial should have been overruled, even if it had been filed within the required four-day period.

Under the existing statutes of this State, motions for new trials in criminal cases must be made and filed within four days after verdict as required by Section

4497 C. G. L., 2810 R. G. S., and the provisions of Section 4498 C. G. L., 2811 R. G. S., authorizing the court to extend the time as much as fifteen days for making a motion for a new trial in *civil* cases cannot, under the express terms of the latter Section, be extended to criminal cases, so as to warrant the court in granting like extensions of time in criminal cases beyond the four days limited by Section 4497 C. G. L., *supra*. McLendon v. State, *supra*.

A motion for a new trial is not necessary for appellate review of errors alleged to have been committed by the trial court during the trial when they have been properly excepted to at the time, and duly reserved and shown in a bill of exceptions, although the inclusion of such errors as grounds of a motion for a new trial is always permissible. Warner v. Goding, 91 Fla. 260, 107 Sou. Rep. 406.

Finding no reversible error in the record, the judgment of conviction is affirmed as to both plaintiffs in error.

Affirmed.

BUFORD, C.J., AND ELLIS, TERRELL AND DAVIS, J.J., AND HUTCHISON, Circuit Judge, concur.

BROWN, J., dissents.

BROWN, J., dissenting.—Under the principles laid down in Suarez vs. State, 95 Fla. 42, 115 So. 519, as I understand them, Heidt's motion for severance should have been granted, and in my opinion the denial of this motion constituted reversible error as to plaintiff in error Heidt.

There is also serious doubt in my mind as to the correctness of the ruling of the trial court in permitting the State to take such a wide range in the cross-examination of the defendant Palmer's witness Thelma Noxon, as to matters which did not affect her credibility, but which tended to degrade the witness, and in then allow-

ing the State to introduce a witness to contradict the testimony of said Thelma Noxon as to collateral issues raised by such wide latitude of cross-examination. It seems to me that these rulings were contrary to the law as enunciated in Butler v. State, 94 Fla. 163, 113 So. 699; Baker v. State, 51 Fla. 1, 40 So. 673, and other Florida cases therein cited. While these rulings and the testimony thus produced may not have had any effect on the question of Palmer's guilt or innocence, they may have had some effect upon the jury as to the question of whether they would make a recommendation of mercy which would have resulted in the imposition of life imprisonment instead of the death penalty. How can we say what effect this evidence did have upon the jury? I fully concur in the principle that convictions in criminal cases should not be reversed for mere technical errors which had no practical bearing on the merits of the case, but it is well settled that errors which are harmful or prejudicial in their nature constitute valid grounds for reversal for a new trial. I am inclined to think that these errors belong to this latter class.

ON PETITION FOR A REHEARING.

PER CURIAM.—On July 19th, 1932, we affirmed the judgment of death entered against the plaintiffs in error, holding at that time that no reversible error warranting a new trial had been made to appear.

While we did not in our opinion filed at that time, undertake to discuss in detail each and every separate assignment of error which had been raised and argued, it does not follow that all of the assignments properly presented to us were not just as fully considered as if they had each been separately discussed.

Opinions prepared and filed by an appellate court are intended to serve two principal purposes: (1) to preserve

for the benefit of the practitioners and the courts the reasons for the decision in the case as a precedent for future cases of like character; (2) to operate as a check upon arbitrary and whimsical decisions by appellate courts whose only restraint in the nature of things is the requirement that when as an appellate court it decides cases a particular way, it shall record its reasons for so doing. Leading members of the judiciary and of the bar have long been protesting the needless multiplication of long and involved opinions by reviewing courts, where only fact questions or questions of law presenting no new questions are involved, and in an effort to obviate the objection as applied to this court, it has become our settled policy to specifically discuss in our opinions only the major points involved in the appeal, not thereby indicating, however, that the minor points not specifically discussed were not just as fully considered and studied by us as were the ones concerning which discussion was had. We deem it necessary to call attention to this practice of ours at this time, because of the frequent number of petitions for rehearing which we are called on to consider, based almost solely on the complaint that because some point was not specifically dealt with in the opinion we filed, that therefore it must not have been considered by us at all.

The present writ of error involves a · judgment of death rendered against each plaintiff in error, and for that reason we have again completely considered and reviewed the entire case in the light of the two specific grounds set up in the petition for rehearing filed on behalf of Norman Heidt.

The first ground of the petition for rehearing is that the court neglected to consider the assignment of error relating to the denial of Heidt's motion for a severance of his trial from that of Victor Palmer. This point was

carefully considered by us but not sustained on the original hearing, except by one Justice of this Court, who filed a dissenting opinion as to that particular proposition.

The majority view was that under the case of Suarez vs. State, 95 Fla. 42, 115 Sou. Rep. 519 (relied upon by plaintiff in error for reversal) the granting of the motion for severance was so largely discretionary that only an abuse of discretion in denying such a motion, would warrant a reversal of the judgment therefor, and that no such abuse appeared in the present case.

Heidt's motion for severance was based upon the allegation that Victor Palmer had confessed the murder of Johnson, and that it would prejudice Heidt to be jointly tried with the man who had confessed his part in a killing in which he (Heidt) was charged with being implicated, because no charge to the jury to disregard the confession by Palmer as evidence against Heidt would erase it from the jury's consideration as such, whether consciously or unconsciously. Ordinarily this might be a good objection. And under the Suarez case we will always consider a violation of the defendant's rights by denial of a severance in a proper case requiring it, as being reversible error "unless the record shows that no injury resulted therefrom to the movant." (See fifth headnote, Suarez case, 95 Fla. text 43).

But Heidt's motion for a severance went further than merely to set up that evidence which was incompetent against Heidt (that is, Palmer's confession) was to be introduced, so as to be prejudicial to Heidt in the eyes of the jury. It set up that Victor Palmer was to be called as a material witness in Heidt's favor, and that to deny a severance would preclude Heidt from the benefit of putting Palmer on the stand as such a defendant's wit-

ness, as Palmer might elect to refuse to testify, inasmuch as he was a defendant on trial.

But Victor Palmer did not refuse to testify. In fact, he did testify and testified fully to everything that he could possibly have testified to had the severance been granted and he been called simply as Heidt's witness. What he testified to was as much in Heidt' favor as it could well have been under the particular circumstances under which the killing was perpetrated. Heidt's only defense to the charge of complicity in the murder was that he went down to the place of the attempted homicide and robbery without knowing why Leavine and Palmer were going there, and that the acts of Leavine and Palmer in attempting the robbery and accomplishing the resulting murder, were without his knowledge until after they had happened. His presence near the scene was admitted. The only thing that was not admitted was that he was present with knowledge that Palmer and Leavine had gone off to commit a robbery and had succeeded in committing a murder instead.

The motion for severance affirmatively stated that unless a severance was granted to the defendant, Norman Heidt, and he be allowed to have a separate trial apart from that of Victor Palmer, that the movant could not place Victor Palmer on the stand as a witness, and would be prevented from having the benefit of his testimony which would be material and of benefit to the defense. The Court had the right to take this statement in the motion for severance at its face value, and to conclude therefrom that the defendant Heidt, the movant, was desirous of using Palmer as a witness in his behalf concerning what transpired at the scene of the homicide, so as to show that movant was not implicated in the murder which had occurred at the hands of Palmer. The record shows that at the trial Victor Palmer was in fact called and testified

as a witness in the case. While it was expressly stated that he was not called as a witness for Heidt, the testimony that was given by him related the whole transaction from beginning to end and Heidt had the benefit of using such parts of it as were favorable to himself, without having to call Palmer as his own witness.

The circumstances, therefore, bring the denial of Heidt's motion for a severance within the ruling of the Suarez case, supra, where it was said that where the defense or interests of two or more jointly indicted are antagonistic, or if evidence which is incompetent against one defendant is to be introduced against another, and is of a sort to be prejudicial to the former in the eyes of the jury, a severance should be granted, and its denial would be reversible error, *unless* the record shows that no injury resulted therefrom to the movant.

In this case the record shows affirmatively that Palmer's testimony was by no means antagonistic to Heidt's theory of defense, which was that he was present in the neighborhood of the murder, but not there as a conspirator in the perpetration of the attempted robbery from which the murder ensued. It also shows that no incompetent evidence of a prejudicial sort to Heidt, was introduced before the jury in the course of submitting the proof against Palmer. So the record affirmatively supports the conclusion that even if technical error was committed by the court in denying the motion for a severance, no injury resulted therefrom to the movant, and therefore no *reversible* error was committed. Saurez vs. State, supra, fifth headnote.

The second ground emphasized by the petition for a rehearing is that the court erred in admitting in evidence over objection, a certain written statement that Heidt had been induced to sign shortly after his arrest. The written statement in question was as follows:

"Feb. 17th, 1931. After being warned of my constitutional rights and told that anything I might say would be and could be used against me. And without fear or promise of reward without being threatened or promised anything. I Norman Heidt known as Bubby of my own free will and accord wish to make the following statement:

I went to the corner of Crescent Place and North A street with Louis Leavine and Victor Palmer the night of January 18th, 1931; Victor and Louis got out of the car and were gone for a few minutes; I heard a gun fire and Louis came back and Victor ran away. Louis and I drove away. Victor did not leave with us. I knew nothing of any criminal intention. I did not have a gun,—and did not know that Victor Palmer or Louis Leavine had a gun." (Signed) Norman Heidt.

The trial Judge treated the foregoing signed statement as a "confession" and after sending the jury out of the court room, made a detailed inquiry as to whether or not it was voluntary and then received it in evidence according to the rule laid down by us in the Nickels case, 90 Fla. 659, 106 Sou. Rep. 479. We find no error was committed in receiving the above quoted paper in evidence under the circumstances for two reasons: (1) if the paper be regarded as a "confession" the rule was complied with in proving it before it was allowed to be considered by the jury; (2) the statement is in reality not a confession, but it is a voluntary statement of fact made by the defendant, which does not *per se* tend to establish his guilt, but which is exculpatory in its nature.

In the case of State vs. Campbell, 73 Kan. 688, 85 Pac. 784, 9 Ann. Cas. 1203, 9 L. R. A. (N. S.) 533, the rule on the subject of such declarations, was stated by the Supreme Court of Kansas as follows:

"Voluntary statements of fact, made by a defendant in a criminal action, which do not tend to establish his guilt, but which are exculpatory in their nature,

are competent evidence against him as admissions of a party."

The distinction between a "confession" and a mere statement or declaration in the nature of an "admission" of one or more particular facts, is one recognized by the courts and text writers because it is a patent distinction in the very nature of things. All "admissions" other than confessions are usable against the accused in a criminal case precisely as against a party in a civil case. See Wigmore, Evidence, Chap. 35, #1050. This rule has been applied in the State of Georgia, where it was held that a declaration made by one charged with murder, admitting the homicide, but disavowing any criminal responsibility therefor, is admissible in evidence as an admission of a fact, and that when it is so admitted, the court will be in error in charging the jury on the subject of "confessions" on the theory that such an admission of a fact is a "confession." See Powell vs. State, 101 Ga. 9, 29 S. E. 309, 65 A. S. R. 277.

An acknowledgment of a subordinate fact, not directly involving guilt, or, in other words, not essential to the crime charged, is not a "confession," because the supposed ground for rejecting *confessions* unless clearly shown to be voluntary, is that a strong motive impels an accused to admit guilt as the price of purchasing immunity from punishment. Therefore when a person only admits certain facts from which a jury may, or may not, infer guilt, there is no "confession" as that term is understood in the criminal law. Covington vs. State, 79 Ga. 687, 7 S. E. 153.

In this case the court upheld defendant's contention that the statement in question should not be introduced except under the rules relating to proof of *confessions,* although it might have been introduced under the foregoing rule of evidence, as a mere *admission* of certain

subordinate facts, from which the jury might, or might not, have inferred guilt. We commend the practice of trial courts in observing the rule of caution in such matters. When in *doubt* it is the better practice to treat such statement of an accused as admissible only under the rule governing admission of ''confessions,'' and requiring that rule to be complied with, even in cases which apparently disclose only admissions of subordinate facts falling within the less stringent rule. The rule of caution followed in this case, and if error was committed in following it, the error was against the State and not against the accused, who cannot complain under such circumstances, since the statement above quoted is by no means a ''confession'' of guilt by Norman Heidt of the crime of murder committed by Palmer in which Heidt was alleged to have been implicated. On the contrary, the statement is of an exculpatory nature for the most part, damaging to Heidt only in the sense that it contained an admission by him that he was in the immediate neighborhood of the killing when the crime was committed, and that he had gone there at the time in company with Palmer, the admitted killer.

When an accused attempts to make an exculpatory statement, which if believed in its entirety would entitle him to be acquitted of the crime charged against him, in connection with which such exculpatory statement was made, the state may introduce such statement in evidence against the accused as an admission by him of the subordinate facts referred to therein, from which the jury, in connection with other evidence in the case, may or may not infer guilt. In this case the State introduced Heidt's so-called ''confession'' for the purpose of showing the subordinate fact of his having gone to the scene of the attempted robbery and murder with the murderer, Joe Palmer, and of his having been near enough to the

actual killing to have heard the shot which resulted in the killing.

The fact that the net result was to have the *admissions* contained in the exculpatory statement operate as links in the chain of circumstantial evidence from which the jury inferred guilt, cannot convert the statement in question into a ''confession'' *per se.*

Petition for rehearing denied.

BUFORD, C.J., AND ELLIS, TERRELL AND DAVIS, J.J., concur.

BROWN, J. (Concurring in the order made).—While I dissented when this case was decided the questions raised by the petition for rehearing were fully considered by the court, and under the rule, I concur with my associate Justices that the petition for rehearing should be denied.