442 So.2d 193 (1983)
Terrell M. JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 59811.
Supreme Court of Florida.
November 23, 1983.
Rehearing Denied January 13, 1984.
*194 James B. Gibson, Public Defender and Ronald K. Zimmet, Chief Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., and Mark C. Menser and Evelyn D. Golden, Asst. Attys. Gen., Daytona Beach, for appellee.
PER CURIAM.
This is an appeal from a conviction for first-degree murder and sentence of death. We have jurisdiction. Article V, § 3(b)(1), Fla. Const. We affirm the conviction and the sentence.
On December 4, 1979, Terrell Johnson went to Lola's Tavern in Orange County to redeem a pistol he had pawned to James Dodson, the bartender/owner of the tavern. Although Dodson had given Johnson fifty dollars when the gun was pawned, he demanded one hundred dollars to return it. Before paying for the gun, Johnson asked to be allowed to test fire it and took the gun to an open field across the road from *195 the bar where he fired several shots. While returning to the bar, Johnson, irate at what he considered to be Dodson's unreasonable demand, decided to rob the tavern. Johnson told police that he took Dodson and a customer, Charles Himes, into the men's room at the end of the bar, intending to tie them up with electrical cord. The customer lunged at Johnson and he began firing wildly, shooting both men. He then returned to the bar and cleaned out the cash drawer, also taking Dodson's gun, which was kept under the bar. As he was wiping the bar surfaces to remove fingerprints, Johnson heard movement from the back room and returned to find the customer still alive. Johnson shot him again, not, according to Johnson, "to see him dead," but to "stop his suffering."
Several weeks later Johnson was arrested in Oregon for an unrelated crime. He still had Dodson's gun  he had sold the murder weapon to an acquaintance in Florida  and thus was linked to the Florida murders based on information from the National Crime Information Center.
Johnson was tried in Orange County on an indictment charging two counts of first-degree murder. He admitted the killings but claimed they were provoked by the customer's attack and denied all premeditation. He was convicted of second-degree murder for the death of the customer and of first-degree murder in Dodson's death. On the first-degree conviction the jury recommended and the trial court imposed the death penalty.
The case was first appealed to the Florida Supreme Court in 1980. At that time the transcript of the trial court proceedings was discovered to be virtually incomprehensible because of omissions (including omissions of several bench conferences and the entire voir dire of the venire panel), misspellings, and obvious inaccuracies in either the recording or the transcription of the trial. This Court therefore relinquished jurisdiction to the trial court to attempt to reconstruct the record and to hold an evidentiary hearing on the accuracy of the transcript. The court reporter revisited her stenographic notes and met with the trial judge and trial counsel. The corrected and supplemented transcript was the subject of extensive hearings into its accuracy and reliability. At the close of those hearings, the presiding judge found the corrected transcripts to contain "no significant or material fault ... [nor to show] even one prejudicial omission or error" and issued an order submitting the revised transcript to this Court. It is this transcript upon which we rely in making our review of the record.
This revised transcript is also the subject of appellant's first point on appeal. He refers to inconsistencies between the original and the corrected transcripts, to the time elapsed between the trial and the reconstruction, and to possible omissions which make effective assistance of appellate counsel and independent appellate review impossible. However, he is unable to point to any omission, inconsistency or inaccuracy which prejudices the presentation of his case. The reconstruction and the evidentiary hearing were conducted pursuant to the order of this Court and in compliance with Florida Rule of Appellate Procedure 9.200(f). At the evidentiary hearing the trial judge, the court reporter and both trial attorneys testified to the substantial accuracy and completeness of the record in all material regards. In the absence of some clear allegation of prejudicial inaccuracy we see no worthwhile end to be achieved by remanding for new trial.
Appellant's second point on appeal merits particular attention because it relates to the issue of the admissibility of certain evidence both as it was presented to the jury in support of the first-degree murder verdict and as it relates to the finding, as a statutory aggravating factor, that the murder was cold, calculated and premeditated. The state presented evidence that Dodson's death had been caused by a close-range execution-style shot to the back of the head. This evidence consisted of testimony by the medical examiner about the pattern of stippling around the wound and testimony by police officer Park about the results *196 of experiments he had conducted with the murder weapon. Park testified that he had fired the gun at white paper from various distances, and he described the marks made on the paper by the unexploded gunpowder discharged with the bullet. Park was not qualified as an expert witness and offered no opinion testimony. Neither did he attempt any comparison between the fatal wounds and the marks on the paper target.
Appellant cites McClendon v. State, 90 Fla. 272, 105 So. 406 (1925) for the proposition that admission of this evidence was prejudicial error. In McClendon, this Court ruled, on facts strikingly similar to those in the case at bar, that paper targets showing powder burns from shots fired at various ranges should not have been admitted into evidence on the issue of the range at which McClendon's alleged victim had been shot because it could not assume "that the effect of pistol fire upon human flesh and upon paper or cloth targets would be essentially similar, in respect to resulting powder burns or marks, when the requisite supporting proof is lacking." 90 Fla. at 280, 105 So. at 409.
The rule of "essential similarity" between test conditions and actual conditions first enunciated in Hisler v. State, 52 Fla. 30, 42 So. 692 (1906), has been eroded as to other types of experimental evidence since that time. Janke v. Corinthian Gardens, Inc., 405 So.2d 740 (Fla. 4th DCA 1981), cert. denied, 413 So.2d 876 (Fla. 1982); Vitt v. Ryder Truck Rentals, 340 So.2d 962 (Fla. 3d DCA 1976). We are convinced that the issue is one of the weight to be given the evidence rather than its relevance or materiality. We, therefore, recede from McClendon insofar as it holds such evidence inadmissible, and we find no error on the record now before us.
Third, appellant raises a Witherspoon objection to the exclusion for cause of prospective jurors Horne and Bowman. While neither of these venirewomen stated on the record that she would "automatically vote against the imposition of capital punishment," Witherspoon v. Illinois, 391 U.S. 510, 516 n. 9, 88 S.Ct. 1770, 1774 n. 9, 20 L.Ed.2d 776 (1968), a review of the voir dire shows that they both made
unmistakably clear (1) that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.

Id. at 522-23 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in the original). The totality of their testimony shows that excusing these women for cause was proper.
Fourth, appellant argues that the trial court should have automatically dismissed the charges against him once the 120-day limits specified in the Interstate Agreement on Detainers (IAD), section 941.45, Florida Statutes (1979), had elapsed. Appellant was brought to Florida from Oregon, where he was serving a sentence, pursuant to the IAD. He was booked into the Orange County jail May 15, 1980 and brought to trial September 23, 1980, obviously more than 120 days after entering the custody of the State of Florida. During this period he was represented by counsel and the IAD documents were a matter of record. Nonetheless, the appellant agreed to a continuance of the trial date from August 12, when trial was originally scheduled. Appellant failed to raise the issue of the 120-day limit at that time or at any time before bringing this appeal.
We cannot find any reason to hold the IAD's 120-day limit to be unwaivable and self-executing. Florida's speedy trial rule, Florida Rule of Criminal Procedure 3.191, protects a constitutional right enunciated in Florida's Declaration of Rights, article I, section 16, Florida Constitution. This fundamental right is neither unwaivable nor self-executing. We see no justification for granting greater dignity to a statutory provision designed to provide for cooperation between the states to effect the "expeditious and orderly disposition of ... *197 charges" against one in custody of another state. § 941.45, Fla. Stat. (1979). The underlying policy of the IAD is to enhance the possibility of rehabilitation by resolving all outstanding charges against a convict regardless of which state has filed the charges. See § 941.45(1), Fla. Stat. (1979). We find no merit in this issue.
Appellant urges that the trial court erred in finding the homicide was committed in a cold, calculated and premeditated manner and that the homicide was committed to avoid lawful arrest. Appellant's basic premise is that the main evidence supporting these findings was the testimony of Officer Park. According to this argument, had Park's testimony been held to be inadmissible, the evidence would not have supported finding these aggravating factors beyond a reasonable doubt. As we have already ruled that Park's testimony was admissible, we also find these factors to have been properly found.
We have reviewed the other aggravating factors relied upon by the trial court and find they were proper. By appellant's own admission, the homicide was committed during a robbery and for pecuniary gain. These two factors were properly merged into one by the trial court. The defendant was under sentence for another crime at the time the murder was committed; Johnson was on parole at the time. The defendant had previously been convicted of felonies involving the use or threat of violence. Appellant argues that the trial court erred in instructing the jury that the felonies of which Johnson had been convicted, attempted robbery and attempted murder, were as a matter of law felonies involving the use or threat of violence. Appellant further contends that the trial court's reliance on this factor was erroneous in the absence of evidence of actual violence used or threatened by appellant. Both robbery and murder involve violence per se; any attempt to commit these crimes must inherently involve the threat of violence. We find no merit here.
Having reviewed the record, we find no support for appellant's other points on appeal and see nothing to be gained by discussing them.
Accordingly, we affirm the conviction of murder in the first degree and the sentence of death.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
SHAW, J., dissents with an opinion.
SHAW, Justice, dissenting.
I would remand for a new trial because the inadequacy of the reconstructed record precludes effective appellate advocacy and careful review. I do not see how a meaningful, independent review of this proceeding can be accomplished when the transcript contains omissions and inaccuracies. I recognize that a complete trial transcript is not required in every instance where there is an alternative adequate substitute. Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). I do not think we have an adequate substitute here.
In the context of providing indigent defendants with trial transcripts at state expense, the United States Supreme Court has identified two factors to be considered in determining need: "(1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript." Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971) (footnote omitted). Our duty in cases where there has been a judgment of conviction for a capital felony and sentence of death is to review the entire record. § 921.141(4), Fla. Stat. (1979); Ferguson v. State, 417 So.2d 639 (Fla. 1982). If we find that the interests of justice require a new trial, we must reverse. Fla.R.App.P. 9.140(f). In the event fundamental error has occurred at any stage of the trial, it is our obligation to discover the error and reverse the conviction or the sentence, as the case might be. *198 This obligation exists regardless of whether defense counsel has discovered such an error. The scope of our review necessitates access to a transcript which reflects more than the general gist of the proceedings, one which is more than "substantially accurate." The record contains omissions; the entire voir dire and numerous changes and additions were inserted some year and a half after the proceedings, when memories admittedly were dim. Reversible error can turn on a phrase. Did it occur here? We cannot be certain.
Moreover, appellate counsel did not participate in the trial and is in the same predicament as we are regarding the transcript. In Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), involving a federal criminal prosecution, the Court stated
when ... new counsel represents the indigent on appeal, how can he faithfully discharge the obligation which the court has placed on him unless he can read the entire transcript? His duty may possibly not be discharged if he is allowed less than that. For Rule 52(b) of the Federal Rules of Criminal Procedure provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The right to notice "plain errors or defects" is illusory if no transcript is available at least to one whose lawyer on appeal enters the case after the trial is ended.
Id. at 279-80, 84 S.Ct. at 426 (footnote omitted). In his concurrence, Mr. Justice Goldberg stated
appointed counsel must be provided with the tools of an advocate. As any effective appellate advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained fingers may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law. Anything short of a complete transcript is incompatible with effective appellate advocacy.
Id. at 288, 84 S.Ct. at 431 (footnote omitted). When there is missing from a record a "substantial and significant portion" in a criminal appeal involving new appellate counsel, reversal is required even in the absence of a specific showing of prejudice. United States v. Selva, 559 F.2d 1303 (5th Cir.1977). The present condition of the transcript in this appeal, in my opinion, renders it the functional equivalent of a transcript with substantial and significant missing portions.
In my view an unequivocally accurate record of the proceedings below is required to enable counsel and this Court to ensure that justice is done.
I would reverse.