LOUIS LEAVINE, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

147 So. 897.
En Banc.
Opinion filed April 18, 1933.
Re-hearing denied May 17, 1933.

448

*Herbert S. Phillips,* for Plaintiff in Error;

*Cary D. Landis, Attorney General, Roy Campbell, Assistant, Charles B. Parkhill,* State Attorney and *John B. Sutton,* for the State.

ELLIS, J.—At the fall term of the Circuit Court for Hillsborough County in 1930, Victor Palmer was indicted for the murder of Joseph B. Johnson, by shooting him with a

pistol. Louis Leavine and Norman Heidt were charged in the same indictment as principals in the second degree. The indictment alleged that they were present unlawfully, and from a premeditated design to effect the death of Johnson, aiding and abetting, procuring and counselling Palmer to commit the murder. See Henry v. State, 81 Fla. 763, 89 Sou. Rep. 136; Brown v. State, 82 Fla. 306, 89 Sou. Rep. 873.

At the fall term 1931 the jury returned a verdict against Leavine of murder in the first degree and on March 9, 1932, judgment of conviction and sentence of death were entered against him. Hon. A. V. Long, Judge of the Eighth Circuit presiding under Executive order dated March 1, 1932. Leavine was arraigned and pleaded not guilty on January 4, 1932, Honorable F. M. Robles, Judge of the Thirteenth Circuit for Hillsborough County presiding.

The offense was alleged to have been committed on January 18, 1931. Palmer and Heidt were arraigned and pleaded not guilty on February 26, 1931, about a week after the indictment was filed during the fall term, 1930. Thus it appears that Leavine's arraignment and conviction occurred about a year later.

Leavine seeks here a reversal of his conviction on writ of error which was taken on September 1, 1932, about five months and three weeks after his conviction and returnable to this Court two months and twenty-one days after the date of the writ.

The first assignment of error rests upon an order "quashing the regular and special panel of jurors out of which a jury was to be selected for the trial of defendant on the 29th day of February, 1932, over the objection and protest of counsel for defendant."

The brief of counsel for Leavine states that in March,

1931, Leavine not having been arrested, a severance was granted and Palmer and Heidt were placed on trial; that they were convicted of murder in the first degree; that a writ of error from this Court to that judgment resulted in an affirmance. Palmer v. State, 106 Fla. 237, 143 Sou. Rep. 126, 145 So. 69.

The bill of exceptions discloses that on February 29, 1932, issue having been joined, the jurors summoned for the trial were called and before being sworn in their *voir dire* the Judge, Honorable L. L. Parks, Judge of the Thirteenth Circuit for Hillsborough County, after making some preliminary remarks about the nature of jury service, the incorruptibility of the courts, and alleged attempts to tamper with jurors and the jury box in other cases, and attempts to bribe jurors in the instant case, evidence of which had come to him, stated that it was his purpose to examine each person whose name appeared upon the list of those called to serve as jurors in order that he might be informed whether "any improper approach" had been made to any of them. The purpose of the statement as made by the court taken in its entirety clearly showed that the court desired to inform those to whom he spoke of certain rumors which had come to the judge concerning efforts made by interested persons to improperly influence those whose names appeared on the list of persons called to serve as jurors in the case, and that he desired by such questioning to ascertain to what extent such rumors were true and how such attempts, if any had been made, affected the panel. The court then proceeded to question eighty-one persons who had been summoned to serve as jurors.

This procedure was not objected to by counsel and no exception to it taken. The result of the questions and answers disclosed that in a few instances designing persons had sought by one means or another to influence the minds

of some of those who had been called to serve as jurors in the case, but as to the greater number of such proposed jurors no evidence of intended corruption of them appeared from their answers to the judge's questions.

At the conclusion of the interrogation, however, the Judge anounced that in his opinion the evidence warranted the quashing of the venire. He then made an order quashing the venire.

To this order counsel for Leavine objected. The grounds' were that no evidence justified the order; that it was an abuse of discretion on the court's part to quash the panel; that it was a reflection upon the honesty of every juror who had told the court that no one had approached him; that it is "an assumption apparent on the part of the court that he is afraid to trust these jurors who have said under oath that they knew nothing about the case and had not been approached" and that it was a "grossly unfair action on the part of the court towards the defendant now on trial." The court treated the objection to the order as a motion of some kind and entered an order that the "motion be denied" and noted an exception. The court then stated that that counsel's assertion of the court's lack of confidence in the persons called as jurors was unfair. The court then called the names of certain of those whom he had interrogated and requested them to remain as he wished to "take this matter up further" with them after the others had gone, and discharged them. This phase of the case, which occurred February 29, 1932, was preserved by a special bill of exceptions which was signed May 23, 1932.

On March 2, 1932, the attorney for Leavine moved the disqualification of Judge Parks. The motion for disqualication was supported by the defendant Leavine as to the facts on which the disqualification was alleged to exist and the affidavits of two others in support of some of the allega-

tions contained in Leavine's affidavit relating to the proceedings occurring in court when Leavine's trial began on January 19, 1932. Attached to the motion, as an exhibit, was a copy of the special bills of exceptions minus the court's certificate, so that the special bill of exceptions appears twice in the record, covering more than one-hundred and seventy-one pages of typewritten matter, more than half of which was unnecessary, the costs of which the county will be called upon to pay on account of the order as to Leavine's insolvency.

Judge Parks made an order disqualifying himself and the Honorable A. V. Long, Judge, sat in the trial of the defendant. When the court convened with Judge Long presiding counsel for Leavine interposed a suggestion that Judge Long was without authority to preside at the trial. Several grounds were urged as the basis of the motion or suggestion. The motion was denied. A motion for a change of venue was presented and then withdrawn. Several more pages of typewritten matter appear at this place unnecessarily. They relate to the examination of the jurors by the court to ascertain if a fair trial was impossible to be obtained.

Now in the record proper the court's statement to the persons called as jurors, and his examination of them as to how and in what manner, if at all, they had been interviewed by interested persons and sought to be influenced in the discharge of their duties, appears for the third time in the transcript, covering seventy-one or more pages of typewritten matter, making in all about 250 pages, of which less than fifty pages were necessary to present the transaction as it occurred and on which complaint of error was based.

There also appears in the record proper the motion to disqualify Judge Parks, together with the affidavits and exhibit, thus introducing in the transcript for the fourth time

the subject matter of the special bill of exceptions and adding about ninety-two more typewritten pages to be paid for by the County. In all about 349 pages of the transcript consists of padding, reiteration unnecessarily of the same incidents of the trial, wholly unnecessary to a presentation of the point involved and unjustified as an item of expense to be charged to the county and to be paid from the public funds.

This is such a manifest abuse of the rules prescribed for the preparation of transcripts of the record as to justify a dismissal of the case and an order that no part of the expense of its preparation be charged to and paid by the county, but because of the gravity of the case the assignments of error discussed will be considered.

The brief states that a challenge to the "panel and array of jurors before the court on March 2, 1932" was made and overruled. No reference is made in the brief, however, to the page in the transcript where such challenge appears.

The above statement of facts contains a recitation of the grounds on which the first three assignments of error were made. The second and third assignments attacking the qualifications of Judge Long and the order overruling the challenge to the panel were abandoned, which leaves for discussion the propriety of the order discharging the persons who were called to serve as jurors based upon the judge's examination of them touching the matter of their possible subjection to improper influences.

The record discloses that on January 25, 1932, Leavine by his counsel moved the court to immediately set the cause for trial and to draw from the jury box before the same was refilled for the present year, a venire of jurors from which to select a jury of twelve men to try the accused. The motion was denied.

On February 29, 1932, as stated, the court discharged the

panel which order is made the basis of the first assignment of error.

. The record discloses that the court on that date ordered that the names of eighteen persons to serve as jurors for the week begining February 29 be drawn from the jury box, pursuant to the provisions of Section 4459, C. G. L., 1927, and that pursuant to the provisions of Section 4461, C. G. L. 1927, the name of 100 persons be drawn from the jury box to try the case of Leavine set for trial for March 2, 1932. The record does not disclose that the twelve jurors selected to try the case against Leavine were unqualified to serve as jurors or were prejudiced or biased against the accused, nor that he did not obtain, so far as the point now being considered is involved, a fair and impartial trial.

The court discharged the panel as then composed on February 29th, because from his investigation he thought that efforts had been made to unlawfully influence some members of the panel and that in the interest of the purity of judicial procedure it was wise to annul the panel and bring forth another from the jury box which would be clear of such imputations. Was that harmful error in the sense that it interfered with any constitutional or satutory right of the accused?

While every person who is tried in a court of justice for the commission of a crime is entitled to have a jury selected and summoned without illegal discrimination of any character, Montgomery v. State, 55 Fla. 97, 45 Sou. Rep. 879, he is not entitled as a matter of right to have any particular jurors impaneled to try this case. See Colson v. State, 51 Fla. 19, 40 Sou. Rep. 183. The right of peremptory challenge is a right to *reject,* not a right to *select.* 1 Thompson on Trials (2 Ed.) Sec. 43; Melbourne v. State, 51 Fla. 69, 40 Sou. Rep. 189; Ammons v. State, 65 Fla. 166, 61 Sou. Rep. 496; McRae v. State, 62 Fla. 74, 57 Sou. Rep. 348;

Penton v. State, 64 Fla. 411, 60 Sou. Rep. 343; Blackwell v. State, 101 Fla. 997, 132 Sou. Rep. 468.

There is nothing in the record tending to show that in drawing the names from the jury box of men to serve for the trial of the accused there was any irregularity or fraud save for the insinuations contained in the affidavit of the accused that the judge had any other object in view than to secure men for that responsible duty whose minds were wholly free from bias or prejudice either for or against the accused, nor that he was injured by the imposition upon him of an unfit or disqualified or prejudiced juror or jury, nor is there anything in the record tending to show that the judge in excusing the entire panel drawn to serve for the week beginning February 29, 1932, abused the discretion vested in him to discharge all those called to serve upon his own motion to the end that those called should be free from any suspicion of having been interviewed for improper purposes. See Ammons v. State, *supra;* Walshingham v. State; 61 Fla. 67, 56 Sou. Rep. 195.

The facts in the Ammons case differed from the facts in this case only in the reason operating upon the Judge for the dismissal of the first panel.

Much of what is stated in the brief as to the progress of the cause from December 15, 1931, is not apparent from the transcript except as it is shown in the affidavits of the accused. It does not affirmatively appear, however, that in the continuances of the cause from day to day for the reasons alleged that the accused was injured or suffered any imposition of hardship affecting his rights. It is true that after examining the jurors called for February 29th, the court found only ten or eleven persons to whom any advances had been made concerning the Leavine case. In the Ammons case, *supra,* the court's justification for discharg-

ing the panel was that several persons whose names appeared on the list of those drawn were ex-policemen.

The argument that to uphold the discretion which was exercised in the case endangers the fair and impartial administration of justice by securing to the judge the power of peremptory challenge and will enable him to pick a jury of his own selection for the conviction or acquittal of an accused, as the judge's inclinations may lead him, seems to us both illogical and exceedingly attenuated. In drawing the names from the jury box there is no power of choice because no power exists to refuse the names as drawn. When 100 names, or even less, are drawn from the box from which twelve are to be selected for trial of a cause, it is most inconvincing to say that the twelve so selected constituted the judge's choice of prejudiced persons to convict the accused. On the other hand, if the twelve chosen were fair and impartial jurors having no bias or prejudice against the accused, possessing no demerits as would from the viewpoint of the accused incapacitate them, it is not clear that the accused has any ground for complaint on that score.

The contention that in discharging the persons called to serve as jurors for the 29th day of February before they were examined generally as to their qualifications as jurors, the court exercised the power of peremptory challenge to the entire list of eighty odd persons is not well founded. The cases cited in support of the proposition that a judge may not excuse a competent juror who has been accepted and sworn are not analogous to the question here presented. In this case the names of persons to serve had been drawn in due course of law from the jury box and such persons appeared before the court to be examined generally as to their qualifications before being sworn on their *voir dire*. The court examined them as to a special matter relating to rumors of efforts having been made to improperly influence

some or all of them regarding the Leavine case. Having satisfied himself that such attempts had been made upon some of the persons whose names were drawn, the court discharged all of them to the end that a new list should be made as to which no such rumors existed. So far from the court's action in that matter being subject to adverse criticism, or being regarded as the exercise of peremptory challenge of jurors, we think the act was most commendable and also free from the charge that it was an exercise of the power of peremptory challenge.

In the circumstances, the discharge of the persons drawn for jury service was in the discretion of the trial court in the interest of a proper administration of justice and it does not appear that the discretion was abused nor that the accused suffered the slightest practical harm. State v. Lundgren, 124 Minn. 162, 144 N. W. Rep. 752, Ann. Cas. 1915 B 377; Dunaway v. State, 90 Fla. 142, 105 Sou. Rep. 816; Barney v. State, 49 Neb. 515, 68 N. W. Rep. 636.

The first assignment of error is not sustained. The second and third assignments of error are abandoned.

Victor Palmer, one of the defendants named in the indictment, was called as a witness for the State. He told how the crime was committed, at what time and place. He stated that he, Heidt and Leavine went in an automobile to a point on a street near a certain apartment house and waited until the deceased arrived in his automobile, placed it in the garage and came out and shut the door; that Leavine then gave a pistol to Palmer and told him to tell the man who had just arrived to "stick up his hands" and that if he did not do it to pull the trigger. Palmer carried out these instructions, Leavine and Heidt being present, and killed Johnson.

On cross examination he testified that he was convicted for the murder of Johnson and was then under sentence of

death; that he had known Leavine for six years. He said that he had been offered no promise by the prosecution to get his sentence commuted if he would testify in this case; that he had no promise made to him at all. He said that he did not expect to be benefitted by testifying in this case, but he thought he should receive some consideration for it, although the State had promised him nothing; that before he was tried Detective Thomas told him that if he, Palmer, would "turn State evidence against Louis Leavine and Bubber Heidt he would see" that Palmer got off with a light sentence. That was before an indictment was returned, about two months before Palmer's trial and about a year before the trial of the instant case.

Counsel for Leavine then asked the witness the following question: "Victor, before you ever testified in the case these promises had been made to you by Fred Thomas, had they not, that he would help you out if you would testify as you have just told the court and jury, he had done that before you testified against yourself, had he not?" The witness answered: "Thomas told me if I would turn State evidence against Louis Leavine and Bubber Heidt he would see that I was helped out;" that the promise was made before he went to trial. Then counsel for Leavine asked the following question: "And when you went on the stand and testified you still believed or felt that it would be to your best interest, did you not?" The court, of its own motion, disallowed the question, on the ground that it was not material because the offer was made before Palmer went to trial, and "this is the first time that he has ever testified against Leavine."

Counsel excepted to the ruling and that transaction is made the basis of the fourth assignment of error.

The theory on which the exception rests is that the question propounded to the witness on cross examination sought

to' elicit the fact that when the witness testified in the case against himself and Heidt, approximately a year before the trial of this case, he was influenced by the hope or feeling that it would be to his best interests to inculpate Leavine and thus affect the credibility of the witness in this case. In that first trial at which Leavine was not present the witness did not impute guilt to Leavine. The fact was established that a detective named Thomas, had, before the first trial, said to Palmer that if he would testify against Leavine and Heidt, the detective "would see" that Palmer "was helped out." In the trial of this case Palmer testified as he did in the case against himself and Heidt about a year before. Heidt did not testify in the instant case and Palmer's testimony constituted practically all of the evidence directly incriminating the plaintiff in error except the testimony of LaBelle, who loaned to Leavine, during the afternoon preceding the night when Johnson was shot, the pistol with which he was killed.

We do not agree with the trial court that the exclusion of the question was proper. The answer sought by the question if it had been an affirmative one would have had some bearing on the credibility of the witness as tending to show at least in some degree a motive for his testimony in that first trial, which it appears was in all essential respects the same as his testimony in this case. The question sought an answer which might have thrown some light on the disposition of the witness to speak truthfully in all essential details. In the story of the crime, as told by the witness, there are one or more points at which a slight variation from the details as related by the witness might have placed Leavine in slightly a more favorable light than that of a cold, calculating, scheming murderer in which the testimony of Palmer placed him.

The question, therefore, was not inadmissible in cross

examination, because the rule is established in this State that in such examination great latitude is allowed to the end that it may be shown what opportunities the witness had for observing the facts and his disposition to speak truthfully. See Wallace v. State, 41 Fla. 547, 26 South. Rep. 713; Fields v. State, 46 Fla. 84, 35 South. Rep 185; Johnson v. Reynolds, 97 Fla. 591, 121 South. Rep. 793; Stewart v. State, 58 Fla. 97, 50 South. Rep. 642; Bonaparte v. State, 65 Fla. 287, 61 South. Rep. 633; Wigmore on Evidence (2 Ed.) Sec. 944.

For the Judge to have said that he thought the evidence was not material probably emphasized the error in excluding the question if the answer had been an affirmative one, because a trial court should avoid making any remark within the hearing of the jury that is capable directly or indirectly, expressly, inferentially or by innuendo of conveying any intimation as to what view he takes of the case or that intimates his opinion as to the weight, character or credibility of any evidence adduced. See Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Roberts v. State, 94 Fla. 149, 113 South. Rep. 726.

Whether error has been made to affirmatively appear however in this instance is another question. In the first place the record does not disclose affirmatively what answer, that is to say, what testimony counsel expected from the witness by the question. If the witness had answered in the negative and counsel expected such answer no practical harm was done. It cannot be assumed that that thought was in counsel's mind which might suit his purpose better on an assignment of error, or that the witness would have given that answer which would have impaired his testimony. How then may it be determined that the effect of the court's ruling was prejudicial error except by assuming that the

witness·would have given such an answer as would, have affected his credibility?

The. witness had already testified on cross examination that. he did not expect to be benefitted by testifying in this case but felt that he should be "considered a little bit," that the State had promised him nothing for testifying in the case, that Thomas did say to him that if he "would turn State evidence in this case that he (Thomas) would see that I (Palmer) got off with a light sentence." So it is impossible to say from the testimony given by him just what his answer to the question would have been or what answer counsel expected. On redirect examination the witness did say that he voluntarily took the witness stand in the first case and that he had not been called to the stand by the State.

It is important that the plaintiff in error should make the alleged error affirmatively to appear from the record. That rule needs the citation of no authority as it is well settled in this State.

We think therefore that the fourth assignment of error· is not supported.

The fifth and sixth assignments of error are discussed together. They are based upon the court's charge to the jury as follows:

"In order that the defendant be found guilty of murder in the first degree the evidence must show beyond a reasonable doubt that Victor Palmer unlawfully killed Joseph B. Johnson by shooting him, as charged, from a premeditated design to effect Joseph B. Johnson's death; that Louis Leavine was present aiding, abetting, assisting, procuring, encouraging, counselling and advising him, the said Victor Palmer, the murder of the said Joseph B. Johnson to do and commit. There must not only be an intention to kill, but also a premeditated intent or design to kill. Design

means intent and premeditated means meditated or thought upon beforehand. Such design must precede the killing by an appreciable length of time, but the time need not be long. It must be sufficient for reflection or consideration upon the matter for choice to kill or not to kill, and for the formation of a definite purpose to kill. But if the evidence in this case convinces the jury to the exclusion of and beyond a reasonable doubt that Victor Palmer unlawfully killed Joseph B. Johnson while perpetrating or attempting to perpetrate robbery, then and in that case it is not necessary for the State to prove a premeditated design to kill. That is to say, if you believe from the evidence beyond a reasonable doubt that Victor Palmer unlawfully killed Joseph B. Johnson, and that at the time of such homicide the said Victor Palmer was perpetrating or attempting to perpetrate an assault upon the said Joseph B. Johnson with intent to rob, and that the defendant Louis Leavine was feloniously present aiding and abetting said Victor Palmer, then it is not incumbent upon the State to prove a premeditated design."

These two assignments of error attack different parts of the general charge. One portion relating to the unlawful killing of Johnson from a premeditated design to kill him, and the other relating to the killing while perpetrating or attempting to perpetrate a robbery. It is asserted that there is an omission from the first part of the charge of a statement that the evidence should show that Leavine was unlawfully present aiding and abetting Palmer *from* a *premeditated* design to kill; that the second part of the charge, relating to the killing while attempting to perpetrate a robbery, is defective because the phrase "attempting to perpetrate an *assault* with *intent* to *rob*" is misleading and not in conformity with the language of the statute.

The criticism of the charge is sound. There were two

theories, each resting upon the evidence in the case, upon which the charge of murder could have been sustained. One was that the killing of Johnson was unlawful and from a premeditated design to kill him. The other, which seemed not to engage the attention of either court or counsel to a very great degree, was that the killing was committed in the perpetration of or in the attempt to perpetrate robbery. See Section 7137 C. G. L 1927.

The only evidence as to the latter phase of the alleged offense was' rather vaguely developed upon the re-direct examination by the State's Counsel, of Victor Palmer in the following questions and answers:

Q. "Now when you told Mr. Johnson or this man to hold up his hands, why did you tell him to hold up his hands?"

A. "Louis told me to tell him to hold up his hands."

Q. "A hold-up, was it not?"

A. "Yes, sir."

Q. "To make money out of him?"

A. "Yes, sir."

Q. "That was your understanding, that you were to rob him?"

Mr. Phillips, counsel for Leavine, at this point objected on the ground that the question was leading. Thereupon the court intervened and said: "I think he had gone far enough with that line of examination."

All investigation as to the purpose of the killing began and ceased at the above quoted questions and answers.

A great deal of testimony was taken which seemed to be superfluous and therefore unessential, yet the court in its, general charge instructed the jury upon the theory of the killing having been committed in the perpetration of or in the attempt to perpetrate robbery.

The charges upon the two theories of murder were inaccurate and tended to mislead the jury because as to the first theory it should have been given to the jury in charge that Leavine, who was indicted as principal in the second degree, also had a premeditated design to kill while aiding and abetting the principal in the first degree. The element of premeditation is material and should be alleged and proved as well against the principal in the second degree as against the principal in the first degree. See McCoy v. State, 40 Fla. 494, 24 South. Rep. 485; Henry v. State, 81 Fla. 763, 89 South. Rep. 136; Pope v. State, 84 Fla. 428, text 442, 94 South. Rep. 865.

Murder is subdivided into three degrees, not three different offenses, and premeditation is an essential element of murder in the first degree where the homicide is not committed in the perpetration of or an attempt to perpetrate rape, arson, robbery, etc. In order to hold one guilty of murder in the first degree who is personally present aiding and abetting a third person to commit the crime, the person present rendering such aid must be shown himself to have had a premeditated design to effect the death of the person killed or knew or believed that the third person who actually fired the fatal shot intended to kill the deceased. See Savage and James v. State, 18 Fla. 909.

The charge complained of by counsel was that the defendant Leavine might be convicted of murder in the first degree if Palmer unlawfully killed Johnson from a premeditated design to effect Johnson's death and that Leavine "was present aiding, abetting, assisting, procuring, encouraging, counselling and advising him (Palmer) the murder of said Joseph B. Johnson to do and commit." "There must not only be an intention to kill, but also a premeditated intent or design to kill." Insofar as the instruction conveys the idea that Leavine was guilty of murder in the

first degree if he was personally present aiding Palmer to commit the murder it was incorrect. Such is not the law and may have easily misled the jury notwithstanding the words in a different sentence immediately following which are above quoted.

In the Hendry case, *supra,* it was pointed out that the rule of the common law that when several persons combine to do an unlawful act and in prosecution of the common object a culpable homicide results all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish was modified in the Savage-James case and the McCoy case, *supra,* to the extent that whether one is indicted for murder in the first degree as principal in the first or second degree the element of a premeditated design to kill the deceased should be established, or in case of a person charges' as principal in the second degree that he knew that the person being aided entertained such design.

The remaining part of the charge relating to the alleged killing of Johnson while perpetrating or attempting to perpetrate a robbery is subject to the same criticism and in addition to that the charge was further encumbered by the almost meaningless phrase "attempting to perpetrate an assault." Notwithstanding the amibguity undoubtedly concealed in that phrase we are unable to say that in and of itself it worked any practical injury to the accused, but on that phase of the case the jury should have been instructed that the accused himself knew that the purpose of Palmer was to rob Johnson or the accused himself had such purpose. In such cases, premeditation to kill is unnecessary.

The seventh assignment of error rests upon the refusal of the court to give the following instruction requested by the accused.

"4. The court further charges you that when circum-

stantial evidence is relied upon to prove the guilt of a person charged with crime the circumstances relied upon must be, not only consistent with the guilt of the defendant, but must also be inconsistent with his innocence. The circumstances must exclude every reasonable hypothesis except the guilt of the defendant before a jury can convict on circumstantial evidence."

Inasmuch as the State relied for conviction upon both phases of murder in the first degree, that is to say, an unlawful killing from a premeditated design to kill and a killing when committed in the perpetration of or in the attempt to perpetrate any robbery, and as to the latter phase of the case the evidence was almost, if not entirely, circumstantial the accused was entitled to the instruction requested. It is unnecessary to review the evidence upon that phase of the case. An examination of it shows that it was almost entirely circumstantial and that consisted of barely more than suspicious circumstances.

The guilt of a person charged with crime must be established beyond a reasonable doubt, a strong probability of crime is not sufficient. Asher v. State, 90 Fla. 75, 105 South. Rep. 140; Cannon v. State, 91 Fla. 214, 107 South. Rep. 350; Hall v. State, 90 Fla. 719, 107 South. Rep. 246.

In the case of Ford v. State, 80 Fla. 781, 86 South. Rep. 715, this Court held that where there is sufficient evidentiary basis for charges given and no material error of law appear therein, a mere failure to charge on circumstantial evidence will not cause a reversal of a judgment of conviction, no charge on that point having been requested.

But a charge on circumstantial evidence was requested in this case, and there were, as pointed out, material errors in the charge upon that phase of murder involving the element of premeditation. *Non non stat* but the jury found the defendant guilty on the other phase of murder where

the killing is committed in the perpetration of or in an attempt to perpetrate robbery. The charge requested by the accused on circumstantial evidence was refused and exception to such refusal was taken before verdict. See Morrison v. State, 42 Fla. 149, 28 South. Rep. 97; Easterlin v. State, 43 Fla. 565, 31 South. Rep. 350.

The requested charge which was refused was signed by the judge and filed. McKinney. v. State, 74 Fla. 25, 76 South. Rep. 333.

In the case of Thomas v. State, 69 Fla. 592, 68 South. Rep. 944, there seems to be an influence in the short opinion rendered that where the State relies for conviction on circumstantial evidence and the court fails to charge on that character of evidence and refuses a requested charge on such evidence it would be error. It is true that this is an affirmative inference drawn from a negative statement in the opinion to the effect that where the case does not depend on circumstantial evidence and the accused does not request charge on such evidence the failure of the court to charge on that character of evidence is not error.

The rule however is generally accepted that because of the nature of circumstantial evidence in which an inference affecting guilt is drawn from collateral facts which have a natural or generally recognized relation to the inference to be drawn, the court should instruct upon the law relating to such evidence where the prosecution relies solely or substantially upon such evidence. See 16 C. J. 1008. To be available to the accused however he should specially request such an instruction. See 16 C. J. 1058. The above rule is supported by many authorities. State v. Smith (Mo.), 190 S. W. Rep. 288; Miller v. State, 88 Tex. Cr. Rep. 69, 225 S. W. Rep. 379, 12 A. L. R. 597; Fuller v. State, 98 Tex. Cr. Rep. 426, 265 S. W. Rep. 1033.

The eighth assignment of error is abandoned. The ninth

assignment rests upon the following charge requested by
the State and given by the court:

"The court further instructs the jury that evidence tend-
ing to prove the flight of a person immediately after the
commission of a crime or after a crime has been committed,
with which he is charged, is a circumstance that may be
considered by the jury in establishing his guilt, not sufficient
in itself to establish guilt, but a circumstance which the jury
may consider in determining the probabilities of his guilt
or innocence. The weight to which that circumstance is
entitled is a matter for the jury to determine in connection
with all the facts and circumstances of the case."

The use of the phrase in relation to the flight of a person
immediately after the commission of crime that the jury
may consider it "in determining the probabilities of his
guilt or innocence" is not approved. See Baker v. State,
51 Fla. 1, 40 South. Rep. 673.

The conviction of a person charged with crime cannot rest
upon probabilities, therefore such an element of uncer-
tainty should not be introduced into the process of reason-
ing from the facts which the jury must employ in arriving
at a conclusion of guilt.

I am authorized to say that Mr. Chief Justice DAVIS
agrees to the foregoing opinion and the conclusion reached
by the author that the judgment of the court should be re-
versed and a new trial ordered; that all the members of the
Court agree to the order that the clerk should assess not
more than twenty-five per cent. of the cost of preparing
the transcript of the record to the County; Messieurs Jus-
tices WHITFIELD, TERRELL, BROWN and BUFORD concur in
the separate opinion of Mr. Justice BUFORD as to the assign-
ments of error discussed in such separate opinion of Mr.
Justice BUFORD and in the conclusion therein stated.

It is therefore the order of the Court that the judgment shall be affirmed.

Davis, C. J., concurs.

Whitfield, Terrell, Brown and Buford, J. J., dissent in part but concur in the affirmance.

Buford, J. (dissenting to opinion by Mr. Justice Ellis, but concurring in affirming the judgment)—I am unable to concur in the conclusion reached by Mr. Justice Ellis in the very able opinion which he has prepared in this case insofar as he maintains that the case should be reversed because of what he points out as error in the giving of certain charges and in the refusal to give certain requested charges. That charge which Mr. Justice Ellis has quoted in his opinion, it appears to me, is entirely sufficient to meet every requirement of a charge to be given by a court on the law of necessity to prove the existence of a premeditated design on the part of the accused to effect the death of the person assaulted or of some other particular person. The language, "In order that the defendant be found guilty of murder in the first degree, the evidence must show beyond a reasonable doubt that Victor Palmer unlawfully killed Joseph B. Johnson by shooting him as charged from a premeditated design to effect Joseph B. Johnson's death; that Louis Leavine was present, aiding, abetting, assisting, procuring, encouraging, counselling and advising him, the said Victor Palmer, the murder of the said Joseph B. Johnson to do and commit," is equivalent to the language, "In order that the defendant be found guilty of murder in the first degree the evidence must show beyond a reasonable doubt that Victor Palmer unlawfully killed Joseph B. Johnson by shooting him as charged from a premeditated design to effect Joseph B. Johnson's death; and that Louis Leavine was present, aiding, abetting, assisting, procuring, encouraging, counselling and advising him, the said Victor Palmer,

so to shoot the said Joseph B. Johnson with a premeditated design then and there to effect the death of the said Joseph B. Johnson."

The charge states the elements which were necessary to constitute murder in the first degree alleged to have been committed by Palmer; it then advises the jury that if Leavine was "present, aiding, abetting, assisting, procuring, encouraging, counselling and advising him, the said Victor Palmer, the *murder* of the said Joseph B. Johnson to do and commit" that then Leavine would also be guilty of murder in the first degree. Had the charge used the word "assault" instead of the word "murder" probably it would have been defective, but to say that one who is present advising and counselling one who is then making an assault on another with a premeditated design to effect the death of the person assaulted, to *murder* the person so assaulted, is equivalent to saying that such person was present advising and counselling such person such assault to make with a premeditated design to effect the death of the person assaulted.

Further language used in the charge strengthens this construction.

The other ground upon which Mr. Justice ELLIS holds that the judgment should be reversed is based upon the refusal of the court to give charge No. 4 requested by the defendant upon the law of circumstantial evidence. It is my opinion that no error was committed in refusing this charge because it was not applicable to this case. The State did not rely upon circumstantial evidence for a conviction in this case, but relied upon the direct given by Victor Palmer. This direct evidence, it is true, was corroborated by proof of some circumstances but that is true in nearly all cases. The charge requested is only proper to be given in cases where the State relies upon circumstantial evidence to prove the guilt of the person charged.

If in all cases where the guilt of the accused is proved by direct evidence and some circumstantial evidence is introduced to corroborate the direct evidence the law should require that such circumstances so proved should not only be consistent with guilt but should be inconsistent with innocence and, if consistent with innocence would require the acquittal of defendant, it would preclude the introduction in evidence of many circumstances which are admissible as tending to prove the defendant's guilt, though not intended to establish the elements of the offense charged. For instance; flight immediately after the alleged commission of a crime may be used as a circumstance tending to prove the defendant's guilt, although a journey away from one's usual place of abode is not at all inconsistent with innocence; and there are many other circumstances which may be consistent with innocence which may be introduced in evidence as tending to prove motive, opportunity or a realization and consciousness of guilt.

For the reasons stated, I think the record discloses no error, but if I could concede that error occurred, the record so strongly establishes the guilt of the defendant of the crime of murder in the first degree committed in the perpetration of an attempted robbery of which the defendant was the instigator and in which the defendant was present, aiding, abetting, encouraging and counselling as to make such errors entirely harmless. I think the judgment should be affirmed.

WHITFIELD and TERRELL, J. J., concur.

BROWN, J. (concurring)—I agree with Mr. Justice BUFORD that no reversible error appears in the giving or refusing of charges; hence I deem it unnecessary to consider the rules respecting harmless error. I concur with him and the majority of the Court that the judgment should be affirmed.