318 So.2d 468 (1975)
John Wesley PRICE, Appellant,
v.
STATE of Florida, Appellee.
Nos. U-397, U-398.
District Court of Appeal of Florida, First District.
August 8, 1975.
Rehearing Denied September 5, 1975.
Albert Datz, of Datz, Jacobson & Dusek, and D.B. Montgomery, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., for appellee.
*469 McCORD, Judge.
Appellant was convicted of grand larceny and of resisting an officer in the performance of a legal duty with violence. He has appealed the judgments and sentences for the two offenses. The two cases were consolidated for trial and have been consolidated on appeal.
At approximately 7 a.m. on April 26, 1973, police officer J.W. Pierotti, was responding to an unrelated call in his patrol car when he observed a man walking along railroad tracks wearing a white hat and carrying a large bag. The officer testified that he and the man looked at each other and the man then went into a wooded undergrowth area alongside the railroad track; that he then turned his police car around, pulled up beside the area where the man had gone into the woods, and saw the man's white hat hanging on tree branches where he had apparently gone in. The officer took the hat and attempted to pursue the man's path through the woods. When the path ended a short way into the brush, the officer came back out and walked along the railroad tracks at the edge of the woods. From there he could hear someone moving through the bushes. With the man traveling through the brush and the officer paralleling his path along the railroad track, the officer came to a point where a bridge leading to a housing project crossed a ditch. At this point, the officer stood behind a telephone pole and could see the man crouched about ten yards inside the woods where he was looking around in an apparent attempt to locate the officer. The officer stated that he looked at the man for approximately 30 seconds. (He subsequently identified appellant as the man he saw crouched in the woods.) The officer then drew his gun, identified himself and approached appellant. He stated that appellant first seemed to accept his authority, but when he replaced the gun in its holster, appellant ran, but the officer overtook and tackled him. The two men fought on the ground for approximately half a minute when appellant broke loose and ran. The officer chased him through the woods and into the housing complex. As they passed, a man in a car evidently recognized appellant as he called him by his first name. Appellant ultimately escaped.
At this juncture, the officer radioed for assistance but he and the two officers who responded to his call were unable to find appellant though they did find in the woods remnants of the bag which appellant had apparently been carrying and scattered around it two clock radios and nine wristwatches. The radios and watches were later identified as having been stolen from S.B. Hubbard Co. whose warehouse was a short distance up the railroad track from the scene of the incident. Appellant's home was also a short distance along the railroad track from the place of the incident. He worked as an inventory counter at the S.B. Hubbard warehouse but had been on vacation for several days at the time the incident occurred. The evidence shows the stolen property had a wholesale value from $250 to $260; that appellant had access to it in that his job as inventory counter took him into the caged security area where it was kept. Appellant was subsequently arrested at work at S.B. Hubbard. He did not testify at the trial, but in support of his defense of alibi, several friends and family members testified that he had been with them in Miami the entire week of the incident.
Appellant first contends that the larceny information was insufficient in that it does not specify with particularity the person, firm or corporation from whom the property was stolen. The information charges that the stolen property was that of "S.B. Hubbard, Division General Parts Co." Appellant argues that it is impossible to tell from the allegations of the information whether the property belonged to a person named "S.B. Hubbard" or a company named "Division Genuine Parts", or both of them, or whether the company *470 named "Division Genuine Parts" was a partnership or a corporation or an individual trading under that name; that the purpose of requiring specificity is to show ownership to be in one other than the accused and to avoid the danger of double jeopardy. The record, however, shows that the true and commonly-known name of the company was S.B. Hubbard, a Division of Genuine Parts Company. The information would not lend itself to a later charge for the same offense. We, therefore, conclude that there is no merit to this contention.
Appellant next contends that the circumstantial evidence was not sufficient to sustain the conviction of larceny. Appellee admits that the state's case against appellant on the larceny charge was based upon circumstantial evidence but contends that the circumstances amply support the jury's verdict. We agree and find from a review of the record that the circumstantial evidence was such that the jury could have reasonably concluded that it was consistent with appellant's guilt and inconsistent with any reasonable hypothesis of his innocence. See Harrison v. State, Fla. App. (1st), 104 So.2d 391 (1958); and Gay v. State, Fla.App. (1st), 258 So.2d 455 (1972).
Appellant further contends that since the evidence to support his conviction of larceny was entirely circumstantial, it was reversible error for the trial judge not to have given an instruction on circumstantial evidence to the jury even though no such instruction was requested. Rule 3.390, F.R.Cr.P., provides in pertinent part as follows:
"No party may assign as error grounds of appeal the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects, and the grounds of his objection..."
On this point, the Supreme Court of Florida in Leavine v. State, 109 Fla. 447, 147 So. 897 said:
"The rule, however, is generally accepted that because of the nature of circumstantial evidence in which an inference affecting guilt is drawn from collateral facts which have a natural or generally recognized relation to the inference to be drawn, the court should instruct upon the law relating to such evidence where the prosecution relies solely or substantially upon such evidence. See 16 C.J. 1008. To be available to the accused, however, he should specifically request such an instruction. See 16 C.J. 1058. The above rule is supported by many authorities ..." (emphasis supplied)
We find no fundamental error in the trial judge not giving the unrequested instruction.
As to appellant's conviction for "resisting arrest with violence" he contends that the evidence was insufficient to prove that the officer was effecting a lawful arrest and contends that such was a necessary element of proof. Although this crime is commonly called resisting arrest with violence, it is more correctly referred to as resisting an officer with violence in his lawful execution of a legal duty. The crime is stated in § 843.01, Florida Statutes, which in pertinent part is as follows:
"Whoever knowingly and willfully resists, obstructs or opposes any sheriff, deputy sheriff, ... in the lawful execution of any legal duty, by offering or doing violence to the person of such officer ... shall be guilty of a felony of the third degree, . .."
The information charged that appellant "did unlawfully, knowingly, and willfully resist or obstruct or oppose J.W. Pierotti, a Deputy Sheriff, with the Jacksonville, Duval County, Sheriff's Office, in the lawful execution of his legal duty, to wit: the arrest of the said John Wesley Price by *471 offering or doing violence to the person of the said J.W. Pierotti." The crime is resisting the officer with violence in the lawful execution of his legal duty. Here, the evidence does not show that the officer had probable cause to believe that a felony had been or was being committed by appellant at the time he attempted to restrain appellant or that appellant was committing a misdemeanor in his presence at such time. Thus, the officer did not have authority at such time to arrest appellant for a crime. The evidence is sufficient, however, to show that at such time the officer had authority to restrain appellant under the "stop and frisk law", Section 901.151, Florida Statutes. That statute provides in pertinent part as follows:
"Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, he may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense."
The above-related circumstances involving the extremely suspicious actions of appellant which the record shows occurred in a high-crime area, were such as to reasonably indicate to the officer that appellant had committed, was committing or was about to commit a violation of the criminal laws. He, thus, had authority and a legal duty to temporarily detain appellant for the purpose of ascertaining his identity and the circumstances surrounding his presence abroad which led the officer to believe that he had committed, was committing, or was about to commit a criminal offense. The evidence shows that appellant resisted with violence the officer's attempts to detain him. We do not consider that the allegation of the information stated under the videlicet (to wit), that the legal duty the officer was lawfully executing was the arrest of appellant, was a fatal variance of proof. The allegation did not state that appellant was being arrested for a crime. It merely alleged that appellant was being arrested. The officer had authority, as aforesaid, to temporarily detain appellant and it matters not that he did not have authority to arrest appellant for a crime at that time. Appellant committed the present crime when he resisted with violence the officer's execution of his legal duty to temporarily detain him. Rule 3.140(o), F.R.Cr.P., provides as follows:
"No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense."
The information here was not such as to mislead or embarrass appellant in the preparation of his defense or expose him to danger of a new prosecution for the same offense.
We have considered appellant's final point and in view of our ruling on the last above point, find it to be without merit.
Affirmed.
BOYER, C.J., and RAWLS, J., concur.