371 So.2d 714 (1979)
Jesus Rivas PEREZ, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1591.
District Court of Appeal of Florida, Second District.
June 8, 1979.
*715 Jack O. Johnson, Public Defender, and W.C. McLain, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
BOARDMAN, Judge.
Jesus Perez appeals judgments and sentences for one count of first-degree murder and two counts of aggravated battery. He was convicted as charged and was given concurrent sentences of life imprisonment on the first-degree murder charge and fifteen years on each of the aggravated battery charges. This appeal timely followed. For the reasons hereinafter set forth we reverse.
The testimony adduced at trial established that appellant ran a fruit harvesting crew for Carlton Fruit Company. Roberto Gutierrez, his son Joel Gutierrez, and Margarito Ramirez were illegal aliens from Mexico who worked for appellant and lived in his house for several weeks prior to the incident in question.
Joel Gutierrez and Ramirez testified that their crew finished working early on Friday, January 27, 1978, and that they left the grove with appellant and Roberto in appellant's pickup truck at about 2:00 p.m. Appellant told the men that Border Patrol officials were watching closely for illegal aliens. He therefore drove back roads returning from the grove. Appellant turned down a dirt road and left the three men in an isolated, wooded area to hide. Appellant returned about one to two hours later. The three men walked toward the road to meet him. Appellant stopped the truck and, without saying a word, began firing at them. Shots hit all three men. Roberto fell; Joel and Ramirez fled. Appellant pursued *716 them, but they escaped by running into the woods. Each eventually made his way to a main road and obtained help.
Hardee County Deputy Sheriff Jeff Maddox testified to statements that Joel Gutierrez made to him on first contact. Notwithstanding the fact that Joel had already testified that appellant shot him, Roberto, and Ramirez, the deputy was permitted to testify that Joel had reported to him that appellant shot them. Appellant timely objected to this testimony on the grounds that it was hearsay and was merely a prior consistent statement. Appellant also moved for a mistrial, which was denied.
Appellant testified in his own behalf as follows: Earlier during the week of the shooting he and Joel had argued about the section of the grove he had assigned to Joel. Roberto became involved, and both Joel and Roberto pulled their knives. However, the argument was settled, and the men went back to work. On Friday of that week as the three men and appellant were returning to Wauchula, Joel started another argument. Following his usual practice of driving back roads during daylight when he had illegal aliens in his crew, appellant was driving his pickup truck along a dirt, back road. Ramirez and Joel were in the cab of the truck with appellant; Roberto rode in the back. Joel was sitting near the passenger window with Ramirez in the center of the seat. Joel began the argument, pulling his knife and holding it in a concealed fashion. Appellant noticed the knife and commented on it. Joel then punched appellant in the chest and hit the steering wheel, causing the truck to swerve. Appellant stopped the truck. When the truck stopped, Joel, Roberto, and Ramirez jumped out. Appellant was frightened. He pulled his .22 semiautomatic rifle, which he normally carried in his truck, and began firing when Joel came at him with a knife. Joel then fled and hid in a ditch. Ramirez also fled. Appellant stopped shooting when he realized that Joel and Ramirez were too far away to be an immediate danger to him. Realizing that Roberto was dead, appellant dragged his body into a palmetto thicket before driving home. Appellant stayed at his house only a short time before going to pick up his pay check. Since the company was not prepared to pay until 5:00 p.m., he returned home for a few minutes. He then returned to the office, where he waited until he was given the check for himself and his crew. After cashing the check, he drove to Bowling Green to pay some of his crew.
Appellant's wife Joyce testified that appellant initially returned home from work between 2:30 p.m. and 3:00 p.m., left again shortly thereafter to get the pay check, and returned. He left again after 4:00 p.m. He returned again about forty minutes later. The two of them then drove out to a place where appellant threw some items into the weeds.
When first questioned by the police, appellant denied any knowledge of the shooting and claimed that the three men had left his employ that afternoon. Later, he gave a second statement admitting the shooting, which substantially comported with his trial testimony. Appellant admitted in his second statement that the items thrown into the weeds were personal items belonging to the three men.
Appellant raises five points on this appeal, of which three have merit and will be discussed.
First, he asserts that it was reversible error to allow the prosecutor to amend the indictment during the trial. He is right, for only a grand jury has the authority to alter an indictment. Russell v. State, 349 So.2d 1224 (Fla.2d DCA 1977); Pickeron v. State, 94 Fla. 268, 113 So. 707 (1927).
Second, appellant contends that the trial court erred in allowing Deputy Maddox to testify that Joel Gutierrez told him that appellant had shot Joel and his companions. This testimony was not only hearsay, but was consistent with Joel's trial testimony. A witness's prior consistent statement may not be used to bolster his trial testimony. Lamb v. State, 357 So.2d 437 (Fla.2d DCA 1978); Roti v. State, 334 So.2d 146 (Fla.2d DCA 1976). The rationale *717 prohibiting the use of prior consistent statements is to prevent "putting a cloak of credibility" on the witness's testimony. Brown v. State, 344 So.2d 641 (Fla.2d DCA 1977). When a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave. Under the circumstances, the error in admitting this hearsay testimony cannot be considered harmless.
Finally, appellant argues that the trial court should have given his requested instruction on circumstantial evidence. Proof of a premeditated design to effect the death of a human being is required for a conviction of first-degree murder. § 782.04(1)(a), Fla. Stat. (1977); Driggers v. State, 164 So.2d 200 (Fla. 1964). Although there was direct evidence, i.e., eyewitness testimony, as to appellant's conduct, the element of premeditation could only have been inferred from appellant's actions and other circumstances. While there is no question but that premeditation may be established by circumstantial evidence, Spinkellink v. State, 313 So.2d 666 (Fla. 1975); McCutchen v. State, 96 So.2d 152 (Fla. 1957), an instruction on circumstantial evidence is required where the prosecution relies solely or substantially on circumstantial evidence to prove an essential element of the offense charged. Leavine v. State, 109 Fla. 447, 147 So. 897 (1933); Newsome v. State, 355 So.2d 483 (Fla.2d DCA 1978).
We have considered the remaining two points raised by appellant and find no error.
For the reasons set forth above, the judgments and sentences against appellant are reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
HOBSON, Acting C.J., and DANAHY, J., concur.