648 So.2d 214 (1994)
John FOGELMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2567.
District Court of Appeal of Florida, Fourth District.
December 21, 1994.
Rehearing Denied January 30, 1995.
*215 Richard L. Jorandby, Public Defender, and Eric M. Cumfer, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
Appellant challenges his convictions for armed kidnapping of a woman and her child, attempted armed sexual battery, attempted robbery with a deadly weapon, and aggravated assault with a deadly weapon. We affirm the admission of collateral act evidence, but because the trial court erred in commenting on the credibility of a key defense witness and in failing to disqualify itself, we reverse.
On December 12, 1989, as L.C. was putting her small son in his car seat after a trip to the Southland Shopping Center, appellant came up and put a knife to her side. He instructed her where to drive and finally told her to stop on a deserted road at the beach. After she parked the car, appellant told her to unbutton her pants and asked the color of her underwear. She told him it was none of his business. Appellant then said he was going to rape her  that he had no choice. He caressed her hair and touched the button *216 to her pants, but L.C. pushed him away. He moved close to her with the knife, saying he did not want to hurt her but he would. He said he had been in prison for 12 years, and he wanted somebody. L.C. told him he would have to hurt her, because she was not going to let him do it. Eventually, he told her to drive back to the shopping center where he left her car.
Appellant was arrested several days later. At trial, appellant's counsel in opening argument admitted that his client had committed the acts but that he was legally insane from a very troubled life. L.C. made a positive identification of appellant and recounted her experience. Over the strenuous objection of appellant's counsel, the state was allowed to introduce similar act evidence. One crime was an abduction and sexual battery of N.A. some twelve years before this crime. The other incident was an abduction and sexual battery of a woman, P.L., the day after the incident with L.C. In each case, appellant abducted the women in their own cars, told them he needed a ride to someplace else, drove them to a remote location and sexually assaulted them. While the appellant abducted his first victim from the same shopping center as he abducted L.C., the kidnapping which occurred the day after the incident with L.C. occurred in a different part of town. In the first incident, he used a chain to threaten his victim, whereas in the other sexual battery he used a knife, just as he had in the abduction of L.C.
Appellant was also tried and convicted of the abduction and sexual battery of P.L. In that case, the state introduced the incidents involving N.A. and L.C. On appeal this court reversed, holding that the admission of this evidence of similar crimes was error. Fogelman v. State, 625 So.2d 893 (Fla. 4th DCA 1993). However, in that case, appellant did not use the defense of insanity. That difference in trial strategy explains the difference in the result here.
Appellant argues that the two other crimes in this case are not similar enough to justify admission, the unique similarity of crimes being necessary when prior acts are introduced to show identity of the perpetrator. In the instant case, identity was not an issue. In Williams v. State, 621 So.2d 413, 414 (Fla. 1993), the supreme court in revisiting Florida's rules of evidence concerning the admissibility of similar crime evidence, stated:
Evidence of other crimes or acts may be admissible if, because of its similarity to the charged crime, it is relevant to prove a material fact in issue. But it may also be admissible, even if not similar, if it is probative of a material fact in issue. Although similarity is not a requirement for admission of other crime evidence, when the fact to be proven is, for example, identity or common plan or scheme it is generally the similarity between the charged offense and the other crime or act that gives the evidence probative value. Thus, evidence of other crimes, whether factually similar or dissimilar to the charged crime, is admissible if the evidence is relevant to prove a matter of consequence other than bad character or propensity. (Citation omitted).
Id. at 414.
The state contends that the similar acts were relevant to prove a material issue in the case other than identity so that unique similarity is not required. It suggests that the similar acts proved intent and, further, that they rebutted the defense of insanity. As to intent, appellant never claimed that he had any other intent but to sexually assault the women, which L.C. testified is what he told her he was going to do to her. Instead appellant claimed he was insane and that his insanity was a long-standing condition which manifested itself prior to the sexual assault on N.A., as opposed to a temporary breakdown at the time of the instant crime. At least one of his experts testified that the incipient causes of his insanity developed in childhood. However, another expert called by the state who had examined appellant after the incident in 1977 involving N.A. testified that he did not find appellant insane at the time of his evaluation. Thus, the testimony regarding the incident with N.A. was relevant to show lack of insanity on the date of the crime involving L.C., in that appellant had acted in a similar manner while sane. See Rossi v. State, 416 So.2d 1166 (Fla. 4th *217 DCA 1982). The incident involving N.A., even though not uniquely similar, was sufficiently similar to be relevant to the determination of appellant's sanity on the date in question, negating his alleged lack of capacity to form a criminal intent.
There is also relevance of the evidence regarding the incident involving P.L. with respect to appellant's alleged insanity. In fact, appellant's expert relied on the P.L. incident to diagnose appellant as having a disassociated state, meaning that he had two personalities, one named John and one named Joey. She derived this from P.L.'s testimony that appellant referred to himself as "Joe" during his attack on her. Where the defense trial strategy is to use the similar incidents affirmatively in the defense case, their introduction cannot be prejudicial error on behalf of the state. Cf. Snowden v. State, 537 So.2d 1383, 1386 (Fla. 3d DCA 1989). Moreover, on the state's case, the method and manner of the P.L. abduction and appellant's actions showed a calculated mind and an understanding of right and wrong, negating the legal insanity of appellant. Although P.L.'s testimony was highly emotional, and the crime against P.L. more heinous in that P.L. had been sexually assaulted orally, vaginally, and anally, under the circumstances of this case where both sides utilized the evidence to further their claims regarding appellant's sanity or lack thereof, we find no error in its admission.
With respect to the other similar act evidence from a witness who saw appellant following women to their cars in a parking lot on the day of appellant's arrest, we find error in its introduction as it did not tend to prove any issue in the case. Moreover, the evidence regarding appellant's attempted escape from jail appears equally irrelevant. However, in light of the entire record, their admission was harmless error. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). Nevertheless, on retrial they should not be introduced.
The defense's most important witness was a Dr. Appel who testified that appellant was legally insane when he committed the offenses involved in this case. Dr. Appel had originally been appointed by the trial court to evaluate appellant and had rendered an opinion that appellant was sane. Later, upon receiving additional personal historical information regarding the appellant's family life, she determined that appellant had been legally insane for a long time. Thus, she became a defense witness. Obviously, with such a change in opinion, the state's cross examination of Dr. Appel was aggressive, and Dr. Appel was somewhat defensive in her answers, failing to directly respond to some questions and giving information supportive of her opinion even when not called for by the question. Several objections were lodged, and the trial court appears to have been somewhat exasperated with the witness, given the following colloquies:
Q. So of all the criminal defendants, approximately one percent use an insanity defense and the number of successful ones is less than one percent.
A. No. Let's do it again. Of all the defendants who go to trial, less than one percent 
THE COURT: This is cross-examination. She brought it out. Go ahead. The objection is overruled.
THE WITNESS: Less than one percent use it. Of those who go to trial, there are a significant number of people who never go to trial where both sides agree by stipulation and those 
THE COURT: Doctor, please answer the question. You're trying to be an advocate, and we have two very competent advocates here.
* * * * * *
Q. And then there came a time where you were no longer listed as a Court expert, is that correct?
A. That is correct. That's in a previous case.
Q. That is as to your evaluation on John Fogleman [sic] as to his insanity?
A. That was in a previous case.
MR. FINKELSTEIN: Your Honor, I'm going to object to counsel 
THE COURT: Please answer the question though.

*218 THE WITNESS: Yeah, that is correct. In a previous case.
MS. SEILER: And I'm going to move to strike her because that is a 
THE COURT: The motion to strike is granted. Now I admonish you, answer the question.
MR. FINKELSTEIN: Judge, I think the witness is trying to answer the question as it's phrased by the prosecutor.
THE COURT: I don't think so. I'm telling her to answer the question.
THE WITNESS: Then I don't understand the question, Your Honor.
THE COURT: Well, repeat the question again.
BY MS. SEILER:
Q. Let me just ask you this. Is this correct, Dr. Appel, that you were at one time appointed by the Court to evaluate John Fogleman [sic] and there came a period of time where you were no longer listed as a Court expert?
A. That is correct.
Q. And as of the time where you were no longer listed as a Court expert, your evaluation of John Fogleman [sic] was that he was competent to stand trial and that he was sane, isn't that correct?
A. That is correct.
Q. And isn't it also true, Dr. Appel, that at a later date you were contacted by Mr. Finkelstein and you became a witness for the defense, and at that time you've stated on your direct examination you learned startling new information that caused you to change your original opinion despite all of your experience? And now you come in here and say not only was he insane then, but he is insane now and he will always be insane, isn't that what you're now saying?
A. I will refer you to Page 5 of my original report.
THE COURT: Well, first of all, answer the question. Then if it requires elaboration you may elaborate. But answer her question.
THE WITNESS: The order of it was I was given the information before my opinion changed. Mr. Finkelstein called and gave me some information, literally sent me two pieces of paper.
* * * * * *
Q. Okay. And so you're aware of the fact that John was terminated from that program, not for psychological problems but because of behavior problems and refusing to follow the rules?
A. That appears to be incorrect. I would have reached that conclusion reading those documents, also. Which is why I attempted to track her and subsequently not being able to track her track David Fizell.
Q. Wait. Excuse me. You said you cannot track Dr. Goldwin.
A. I didn't know her married name. I knew only Irit Hamel at that point.
Q. Mr. Finkelstein has all the information on discovery.
A. Sorry, I didn't ask him. But I did find David Fizell who's referred to as his treating doctor in that, who is a psychologist.
Q. But you didn't mention any reports in your evaluation of John Fogleman [sic] about this Dr. Fizell.
A. No, I spoke to 
Q. I'm not talking about him. I'm talking about Dr. Irit Hamel Goldwin at this time. And I would just like you to answer my questions pertaining to her because she's the one that did the discharge summary for John Fogleman [sic].
A. But she was not his treating doctor.
MS. SEILER: Doctor, you're putting facts into evidence here. Your Honor, I'm going to move to strike her testimony.
THE COURT: The motion to strike is granted. Now, doctor, I don't want to have to caution you again. You answer the question and put a period. You're trying to act as an advocate. And this is  don't shake your head at me. You're going to 
MR. FINKELSTEIN: Judge, I want to approach the bench, please.
THE COURT: No, you just sit down.
MR. FINKELSTEIN: Judge, I have a motion to make.
THE COURT: Well, you can make it after we're through.

*219 MR. FINKELSTEIN: Please preserve it contemporaneously on the record at this time.
THE COURT: Yes. All right. Let's go on. And, doctor, answer the question and put a period at the end. Now let's get on with this thing or we'll be here all night.
* * * * * *
While a trial court has great latitude in controlling the proceedings and witnesses in the courtroom, the trial court must exercise great care in not intimating to the jury the court's own opinion as to the weight, character or credibility of a witness. See Seward v. State, 59 So.2d 529 (Fla. 1952).
[A] trial court should avoid making any remark within the hearing of the jury that is capable directly or indirectly expressly, inferentially, or by innuendo of conveying any intimation as to what view he takes of the case or that intimates his opinion as to the weight, character, or credibility of any evidence adduced.
Leavine v. State, 109 Fla. 447, 147 So. 897, 902-03 (1933). See also Reyes v. State, 547 So.2d 347 (Fla. 3d DCA 1989). In Millet v. State, 460 So.2d 489 (Fla. 1st DCA 1984), review dismissed, 466 So.2d 218 (Fla. 1985), the trial court made four comments which indicated the trial court's belief that the testifying defendant was being unresponsive to the questioning. In discussing the impact of the trial judge on the jury, the appellate court quoted from Ehrhardt, Florida Evidence § 106.1, p. 22, which states:
During a jury trial, the judge occupies a dominant position. Any remarks and comments that the judge makes are listened to closely by the jury and are given great weight. Because of the credibility that the comments are given and because they would likely overshadow the testimony of the witnesses themselves and of counsel, Section 90.106 recognizes that a judge is prohibited from commenting on the weight of the evidence, or the credibility of the witness, and from summing up the evidence to the jury. If such comment and summing up were permitted, impartiality of the trial would be destroyed.
Id. at 491-92. Rejecting the contention of the state that the objection to the trial court's comments was not preserved because of counsel's failure to request a curative instruction, the First District said:
In our view, the very existence of the judge's comments were of such character that they might potentially have affected the defendant's right to a fair trial, so that the motion for a corrective instruction would simply have been superfluous.
Id. at 492. While the court found that the remarks were harmless in the context of the overwhelming evidence in the case, the court commented that in a case of less evidentiary force, a reversal may be required, quoting from Hamilton v. State, 109 So.2d 422, 424-25 (Fla. 3d DCA 1959):
The dominant position occupied by a judge in the trial of a cause before a jury is such that his remarks or comments, especially as they relate to the proceedings before him, overshadow those of the litigants, witnesses and other court officers. Where such comment expresses or tends to express the judge's view as to the weight of the evidence, the credibility of a witness, or the guilt of an accused, it thereby destroys the impartiality of the trial to which the litigant or accused is entitled.
Id. at 493. When, as in the instant case, the trial court tells a witness that she is acting as an advocate, the jury is likely to conclude that in the trial court's vast experience in dealing with expert witnesses, the trial court thinks that this witness is not testifying as to facts and opinions but is arguing a position. That could be devastating to the credibility of the witness in the eyes of the jury. Dr. Appel was the key witness to appellant's only defense of legal insanity. Although there was strong evidence of appellant's sanity, we cannot say that the evidence was so overwhelming as to render this destruction of the defense expert nothing more than harmless error. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). We therefore reverse and remand for a new trial.
We also conclude that the trial judge should have disqualified himself from the case. Previously in this case, the defense had successfully sought the disqualification of the assigned judge. Thus, the procedure for *220 disqualifying a successor judge is set forth in Fla.R.Crim.P. 3.230(e)[1], which is identical to section 38.10, Fla. Stat. (1991):
(e) When the prosecuting attorney or defendant shall have suggested the disqualification of a trial judge and an order shall have been made admitting the disqualification of such judge, and another judge shall have been assigned to act in lieu of the judge so held to be disqualified the judge so assigned shall not be disqualified on account of alleged prejudice against the party making the motion in the first instance, or in favor of the adverse party, unless such judge shall admit and hold that it is then a fact that he, the said judge, does not stand fair and impartial between the parties and if such judge shall hold, rule and adjudge that he does stand fair and impartial as between the parties and their respective interest, he shall cause such ruling to be entered on the minutes of the court, and shall proceed to preside as judge in the pending cause. The ruling of such judge may be reviewed by the appellate court, as are other rulings of the trial court.
In this case the defense moved to disqualify the trial court alleging in a motion that the trial court commented to other attorneys "to the effect that what he (John Fogelman) did to the victim [P.L., the victim in the other case], if she were my daughter I would kill him." This comment was made after the judge had heard the testimony of P.L. during the instant trial. The judge admitted making the statement but determined that since it was a comment regarding another proceeding over which he was not presiding it did not require his disqualification. The trial judge denied the motion as legally insufficient. The trial court's ruling was in error. The remark showed a complete absence of neutrality of the judge toward the defendant. It went beyond comments regarding his opinion of the guilt or innocence of the appellant which might have been formed as a result of listening to the trial evidence. Instead, the comment showed a strong personal bias, which he tied to his concerns as a parent. One assumes that he did not think the penalty imposed on appellant for the P.L. incident was adequate for the type of crime. Therefore, faced with a legally sufficient motion, the trial court was required to have determined whether he stood fair and impartial between the parties and placed his ruling on the record. Absent that finding, a review of the record prevents us from concluding that the error was harmless. The court appeared highly critical of the entire defense team. Coupled with the judge's statements regarding appellant's main witness together with many remarks directed at appellant's counsel throughout the proceeding, we believe that on this record the judge's neutrality could reasonably be questioned. See Williams v. State, 143 So.2d 484 (Fla. 1962). Moreover, even if the trial court had determined that he stood fair and impartial between the parties, given the strong extra-judicial statements evincing bias together with the in-court treatment of counsel and witnesses, we would be compelled to conclude that an abuse of discretion occurred.
We affirm as to the remaining points regarding trial errors. We do not address the sentencing issues because of the necessity for a retrial.
GLICKSTEIN, J., concurs.
POLEN, J., concurs in result only without opinion.
NOTES
[1] That section was repealed and replaced by Florida Rule of Judicial Administration 2.160, effective January 1, 1993.